IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01955-BNB

ROBERT J. FREEMAN,

Applicant,

v.

ARISTEDES ZAVARAS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

Respondents.

---

ORDER OF DISMISSAL

---

Applicant, Robert J. Freeman, is a prisoner in the custody of the Colorado Department of Corrections at the Arkansas Valley Correctional Facility in Crowley, Colorado. Mr. Freeman has filed ***pro se*** an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) challenging the validity of his conviction in Arapahoe County District Court case number 97CR324.

On August 4, 2011, Magistrate Judge Boyd N. Boland ordered Respondents to file a Pre-Answer Response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies pursuant to 28 U.S.C. § 2254(b)(1)(A) if Respondents intend to raise either or both of those defenses in this action. On August 25, 2011, Respondents filed their Pre-Answer Response (Doc. #7). On September 14, 2011, Mr. Freeman filed a Reply to Respondent[s'] Pre-Answer Response (Doc. #8). On September 22, 2011, Magistrate Judge Boland entered an order directing Respondents to file a supplement to their Pre-Answer Response if they

wish to respond to the equitable tolling and actual innocence arguments raised by Mr. Freeman in his reply. On October 13, 2011, Respondents filed a Supplement to Pre-Answer Response (Doc. #10). On November 2, 2011, Mr. Freeman filed a Reply to Respondent[s'] Supplement to Pre-Answer Response (Doc. #11).

The Court must construe the application and other documents filed by Mr. Freeman liberally because he is not represented by an attorney. ***See Haines v. Kerner***, 404 U.S. 519, 520-21 (1972); ***Hall v. Bellmon***, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a ***pro se*** litigant. ***See Hall***, 935 F.2d at 1110. For the reasons stated below, the Court will dismiss the action as untimely.

Mr. Freeman was charged with multiple crimes after attempting to murder his stepdaughter and her boyfriend by detonating a pipe bomb under their car and shooting his stepdaughter twice as she ran from the car. He entered a plea of not guilty by reason of insanity. Following a unitary jury trial, the jury rejected the insanity defense and convicted Mr. Freeman of attempted first degree murder, two counts of attempted second degree murder, and one count of conspiracy to commit first degree murder. He was sentenced to a total term of 144 years in prison. The judgment of conviction was affirmed on direct appeal. ***See People v. Freeman***, 47 P.3d 700 (Colo. App. 2001). On June 3, 2002, the Colorado Supreme Court denied Mr. Freeman's petition for writ of certiorari on direct appeal. (***See*** Doc. #7-4.)

On August 22, 2002, Mr. Freeman filed in the trial court a postconviction Rule 35(c) motion challenging the restitution portion of his sentence. (***See*** Doc. #7-9 at 3.)

The trial court denied that motion on December 23, 2002. (***See id***.) Mr. Freeman did not appeal.

On September 18, 2002, Mr. Freeman filed in the trial court a postconviction Rule 35(b) motion to reconsider his sentence. (***See id***.) The trial court denied the Rule 35(b) motion on December 24, 2002. (***See id***.) Mr. Freeman did not appeal.

On June 9, 2003, Mr. Freeman filed in the trial court a motion requesting a loan of transcripts. (***See id***.; Doc. #10-1.) That motion was denied on August 3, 2004. (***See*** Doc. #7-9 at 3; Doc. #10-2.) On September 15, 2004, Mr. Freeman filed in the trial court a second motion requesting a loan of transcripts. (***See*** Doc. #7-9 at 2-3; Doc. #10-4.) The second motion for transcripts was denied on November 30, 2004. (***See*** Doc. #7-9 at 2; Doc. #10-5.)

On March 21, 2005, Mr. Freeman filed in the trial court a second postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure. (***See*** Doc. #7-9 at 2.) On April 26, 2005, the trial court denied the second Rule 35(c) motion because Mr. Freeman had not used the proper form. (***See id.***) On May 18, 2005, Mr. Freeman refiled the second Rule 35(c) motion using the proper form. (***See id.***) The trial court denied the second Rule 35(c) motion on November 3, 2008, and the trial court's order was affirmed on appeal. ***See People v. Freeman***, No. 08CA2377 (Colo. App. Feb. 24, 2011) (unpublished) (Doc. #7-6). On June 20, 2011, the Colorado Supreme Court denied Mr. Freeman's petition for writ of certiorari in the state court postconviction proceedings. (***See*** Doc. #7-8.)

Mr. Freeman filed the instant application on July 28, 2011, asserting seven

claims for relief.[1] He specifically claims that:

1(a). The trial court erred in failing to instruct the jury regarding the limited purpose for admission of Mr. Freeman's statements to Dr. Miller during a court-ordered sanity examination.

1(b). The trial court erred in admitting the expert testimony of Dr. Miller because it was based on false information.

2. The trial court erred in admitting statements obtained by jailhouse informant Eddie Johnson in violation of Mr. Freeman's right to counsel.

3. The trial court erred in admitting statements obtained from Mr. Freeman during police interrogations.

4. The trial court erred in admitting evidence of Mr. Freeman's character in violation of Rule 404 of the Colorado Rules of Evidence.

5. The prosecution committed misconduct by improperly influencing Dr. Miller's opinion and testimony, knowingly presenting false testimony of Eddie Johnson, knowingly presenting false testimony of Charles Spink, and destroying the exculpatory portion of the interrogation tape.

6. Trial and/or appellate counsel were ineffective by failing to properly investigate witnesses Eddie Johnson, Charles Spink, and Dr. Miller; failing to properly investigate the circumstances surrounding Mr. Freeman's statements to the police; failing to hire an explosives expert; and failing to raise the issue of illegal sentences on appeal.

Respondents first assert that the instant action is barred by the one-year limitation period in 28 U.S.C. § 2244(d). That statute provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

[1]Mr. Freeman's first two claims are numbered 1(a) and 1(b) in the application. (***See*** Doc. #1 at 11-12.) He asserts two claims identified as claim 5 in the application, the second of which is an ineffective assistance of counsel claim. (***See id***. at 19-22.) Respondents identify the ineffective assistance of counsel claim as claim 6 in their Pre-Answer Response (***see*** Doc. #7 at 15) and Mr. Freeman does the same in his reply (***see*** Doc. #8 at 11). The Court also will refer to the ineffective assistance of counsel claim as claim 6.

> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In order to apply the one-year limitation period, the Court first must determine the date on which Mr. Freeman's conviction became final. ***See*** 28 U.S.C. § 2244(d)(1)(A). In general, a conviction becomes final following a decision by the state court of last resort on direct appeal when the United States Supreme Court denies review, or, if no petition for writ of certiorari is filed, when the time for seeking such review expires. ***See Locke v. Saffle***, 237 F.3d 1269, 1273 (10th Cir. 2001). Pursuant to Rule 13.1 of the Rules of the Supreme Court of the United States, Mr. Freeman had ninety days to seek review in the United States Supreme Court after the Colorado Supreme Court denied

his petition for writ of certiorari on direct appeal on June 3, 2002, but he did not do so. Therefore, the Court finds that Mr. Freeman's conviction became final on September 3, 2002, when the time for filing a petition for writ of certiorari in the United States Supreme Court expired.[2] Mr. Freeman's argument that the state court proceedings did not end until the Colorado Supreme Court issued its mandate on direct appeal on June 14, 2002, does not alter the date on which his conviction became final because, pursuant to Rule 13.3 of the Rules of the Supreme Court of the United States, the time to file a petition for writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed and not the date on which the mandate issues.

Mr. Freeman contends that the one-year limitation period did not begin to run when his conviction became final because it began to run on a later date as provided in § 2244(d)(1)(B) and § 2244(d)(1)(D). The potential starting date in § 2244(d)(1)(B) is "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Mr. Freeman specifically argues that he was prevented from filing a timely action because his trial and direct appeal attorneys did not provide him with documents from their files until October 2004 despite several requests for those documents beginning in June 2002, and because the trial court denied the motions he filed in June 2003 and September 2004 seeking a loan of transcripts. Mr. Freeman maintains that access to the documents in his attorneys' files

---

[2]The ninetieth day after June 3, 2002, was Sunday, September 1, 2002, and the next day was a federal legal holiday. Therefore, the filing period extended until Tuesday, September 3, 2002. ***See*** Sup. Ct. R. 30.1.

and the transcripts was necessary to pursue postconviction relief in both state and federal court.

The Court is not persuaded by these arguments because § 2244(d)(1)(B) only applies in the context of an impediment created by unconstitutional state action. Mr. Freeman fails to demonstrate the existence of any unconstitutional state action because his attorneys are not state actors, ***see Polk County v. Dodson***, 454 U.S. 312, 325 (1981), and he fails to demonstrate that the trial court's denial of his motions for a loan of transcripts violated his rights under the Constitution or federal law.

The Court also is not persuaded that a lack of access to the documents in his attorneys' files or the transcripts actually prevented Mr. Freeman from filing a federal habeas petition. ***See Lloyd v. Van Natta***, 296 F.3d 630, 633 (7th Cir. 2002) (stating "that whatever constitutes an impediment [under § 2244(d)(1)(B)] must ***prevent*** a prisoner from filing his petition"); ***see also Heinemann v. Murphy***, 401 F. App'x 304, 309-10 (10th Cir. 2010) ("Courts have unanimously rejected the proposition that the absence of transcripts automatically triggers statutory tolling under § 2244(d)(1)(B)."). Mr. Freeman maintains that a lack of access to the documents in his attorneys' files and the transcripts prevented him from presenting his claims properly in state court postconviction proceedings and that this impediment to pursuing postconviction relief in state court necessarily impeded his ability to file a federal petition because he is required to exhaust state remedies before filing a federal petition. However, some of Mr. Freeman's claims already had been exhausted on direct appeal. In addition, the motions for transcripts, which Mr. Freeman filed prior to his receipt of the documents from his attorneys and obviously without access to the requested transcripts, outlined

the claims he sought to raise in the state court postconviction proceedings. (***See*** Doc. #10-1 at 2-3; Doc. #10-4 at 1-2.) Under Colorado law, "[a] defendant need not set forth the evidentiary support for his allegations in his initial Crim. P. 35 motion; instead, a defendant need only assert facts that if true would provide a basis for relief under Crim. P. 35." ***White v. Denver Dist. Court***, 766 P.2d 632, 635 (Colo. 1988). Therefore, the Court cannot conclude that Mr. Freeman was prevented from filing either a state postconviction motion or a federal habeas petition as required under § 2244(d)(1)(B). To the extent Mr. Freeman asserts these same arguments in support of equitable tolling of the one-year limitation period, the arguments will be addressed in that context below.

Finally, the Court will address one other issue that may be relevant to § 2244(d)(1)(B), even though Mr. Freeman does not specifically raise the argument. Mr. Freeman asserts that his constitutional rights under ***Brady v. Maryland***, 373 U.S. 87 (1963), were violated because the prosecution withheld exculpatory evidence that Eddie Johnson, a jailhouse informant who testified for the prosecution, was a paid government agent. At Mr. Freeman's trial, Eddie Johnson testified that he did not expect to receive a benefit for providing information regarding Mr. Freeman. The specific ***Brady*** material at issue is a letter addressed to an individual in the district attorney's office that is purportedly signed by Eddie Johnson and dated January 13, 1997. (***See*** Doc. #7-5 at 39-42.) The letter refers to the consequences of again doing the right thing while in jail and states "Mr. Stephen Lee and Frank Moschetti I felt needed some help. RE: Mr. Freeman." (Doc. #7-5 at 39.) The letter also states "[t]he last time I saw Frank Moschetti of your office. He said he would see my sentence halfed [sic]. That was after

Mr. Fred Nichols was convicted in the Lori Ann Lowe murders." (***Id.*** at 41.) The record indicates that Frank Moschetti was a prosecuting attorney in Mr. Freeman's case. Mr. Freeman contends that he discovered this letter in October 2008 and that the letter is exculpatory because the letter demonstrates Eddie Johnson, contrary to his trial testimony, did receive a benefit in exchange for his testimony.

Mr. Freeman primarily relies on the Eddie Johnson letter in support of equitable tolling of the one-year limitation period, an issue that will be addressed below. The Court rejects the argument that the Eddie Johnson letter could be construed as an argument for delaying commencement of the one-year limitation period in the context of § 2244(d)(1)(B). First, it is not clear that § 2244(d)(1)(B) applies to ***Brady*** claims, ***see Wood v. Spencer***, 487 F.3d 1, 6 (1st Cir. 2007) (declining to resolve the "vexing question" of whether § 2244(d)(1)(B) applies to ***Brady*** claims), because a different statutory provision, § 2244(d)(1)(D), specifically relates to the discovery of the factual basis for a claim. More importantly, and assuming § 2244(d)(1)(B) does apply to ***Brady*** claims, there is no allegation or indication that the alleged ***Brady*** violation prevented Mr. Freeman from filing a federal habeas petition. Although any federal habeas petition Mr. Freeman filed prior to his discovery of the alleged ***Brady*** material would not have included a claim based on suppression of the ***Brady*** material, the alleged ***Brady*** violation did not prevent Mr. Freeman from pursuing any claims unrelated to the alleged ***Brady*** violation. Furthermore, the federal habeas corpus statutes do not prohibit a claim raised in a second or successive habeas corpus petition when the factual predicate "could not have been discovered previously through the exercise of due

diligence." 28 U.S.C. § 2244(b)(2)(B)(i).

Mr. Freeman next argues that his discovery of the alleged ***Brady*** material in October 2008 delays commencement of the one-year limitation period until that time pursuant to § 2244(d)(1)(D). Pursuant to § 2244(d)(1)(D), the one-year limitation period does not begin to run until the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. The Court is not persuaded by Mr. Freeman's § 2244(d)(1)(D) argument because he fails to demonstrate that the Eddie Johnson letter, which is dated January 13, 1997, could not have been discovered prior to October 2008 through the exercise of due diligence. It is Mr. Freeman's burden to demonstrate due diligence in the context of § 2244(d)(1)(D). ***See Shabazz v. Filion***, 402 F. App'x 629, 630 (2d Cir. 2010). The Court finds that Mr. Freeman fails to satisfy this burden because he fails to explain the circumstances of his alleged discovery of the letter in October 2008. As a result, the Court is unable to conclude that Mr. Freeman could not have discovered the letter earlier through the exercise of due diligence.

For all of these reasons, the Court finds that the one-year limitation period began to run on September 3, 2002, when Mr. Freeman's conviction became final.

The next question the Court must answer is whether any of the postconviction proceedings Mr. Freeman initiated tolled the one-year limitation period. Pursuant to 28 U.S.C. § 2244(d)(2), a properly filed state court postconviction motion tolls the one-year limitation period while the motion is pending. An application for postconviction review is properly filed within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." ***Artuz v. Bennett***,

531 U.S. 4, 8 (2000). These requirements include:

> (1) the place and time of filing; (2) the payment or waiver of any required filing fees; (3) the obtaining of any necessary judicial authorizations that are conditions precedent to filing, such as satisfying any filing preconditions that may have been imposed on an abusive filer; and (4) other conditions precedent that the state may impose upon the filing of a post-conviction motion.

***Habteselassie v. Novak***, 209 F.3d 1208, 1210-11 (10th Cir. 2000).

The issue of whether a state court postconviction motion is pending for the purposes of § 2244(d)(2) is a matter of federal law, but "does require some inquiry into relevant state procedural laws." ***See Gibson v. Klinger***, 232 F.3d 799, 806 (10th Cir. 2000). The term "pending" includes "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application." ***Barnett v. Lemaster***, 167 F.3d 1321, 1323 (10th Cir. 1999). Furthermore, "regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner ***could have*** sought an appeal under state law." ***Gibson***, 232 F.3d at 804.

Mr. Freeman contends that the first Rule 35(c) motion filed on August 22, 2002, challenging the restitution portion of his sentence, and the Rule 35(b) motion for sentence reconsideration filed on September 18, 2002, were properly filed and tolled the one-year limitation period in accordance with § 2244(d)(2). The Court will assume that both motions were properly filed. As noted above, the trial court denied the first Rule 35(c) motion on December 23, 2002, and denied the Rule 35(b) motion on

December 24, 2002. Although Mr. Freeman did not appeal from the denial of either motion, the one-year limitation period was tolled until the time for filing a notice of appeal expired forty-five days later. ***See*** Colo. App. R. 4(b). Therefore, the one-year limitation period was tolled pursuant to § 2244(d)(2) from September 3, 2002, when it began to run, until February 7, 2003, when the time for filing an appeal from the trial court's December 24, 2002 order expired.

Mr. Freeman argues that the one-year limitation period also was tolled pursuant to § 2244(d)(2) while his postconviction motions seeking a loan of transcripts were pending. As noted above, the first motion for transcripts was filed June 9, 2003, and denied on August 3, 2004. The second motion for transcripts was filed September 15, 2004, and denied on November 30, 2004. The Court finds that the motions for a loan of transcripts did not toll the one-year limitation period pursuant to § 2244(d)(2). ***See, e.g., May v. Workman***, 339 F.3d 1236, 1237 (10th Cir. 2003) (finding that postconviction motions for transcripts and petitions for writs of mandamus relating to those motions do not toll the one-year limitation period pursuant to § 2244(d)(2)). Mr. Freeman's reliance on ***Rothaermel v. Zavaras***, No. 09-cv-00965-ZLW, 2009 WL 1810838 (D. Colo. June 24, 2009), in support of this argument is misplaced. In ***Rothaermel***, the court did not reach the issue of whether the prisoner's motions requesting free transcripts tolled the one-year limitation period in accordance with § 2244(d)(2) because the first such motion was filed after the one-year limitation period already had expired. ***See id.*** at *3.

Finally, the state court proceedings relevant to Mr. Freeman's second postconviction Rule 35(c) motion, which was filed on the proper form on May 18, 2005,

also did not toll the one-year limitation period in accordance with § 2244(d)(2) because the second Rule 35(c) motion was filed after the one-year limitation period already had expired in February 2004. ***See Clark v. Oklahoma***, 468 F.3d 711, 714 (10th Cir. 2006) (stating that properly filed state court postconviction motions toll the one-year limitation period only if they are filed within the one-year limitation period). Therefore, this action is time-barred in the absence of some other reason to toll the one-year limitation period.

The one-year limitation period in § 2244(d) is not jurisdictional and may be tolled for equitable reasons. ***Holland v. Florida***, 130 S. Ct. 2549, 2562 (2010). Generally, equitable tolling is appropriate if the petitioner shows both "that he has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way" and prevented him from filing in a timely manner. ***Pace v. DiGuglielmo***, 544 U.S. 408, 418 (2005); ***see Miller v. Marr***, 141 F.3d 976, 978 (10th Cir. 1998). A showing of excusable neglect is not sufficient to justify equitable tolling. ***See Gibson***, 232 F.3d at 808. Furthermore, in order to demonstrate he pursued his claims diligently, the petitioner must "allege with specificity 'the steps he took to diligently pursue his federal claims.'" ***Yang v. Archuleta***, 525 F.3d 925, 930 (10th Cir. 2008) (quoting ***Miller***, 141 F.3d at 978).

Equitable tolling also may be appropriate if the petitioner actually is innocent. ***See Gibson***, 232 F.3d at 808. An actual innocence argument "is premised on the same fundamental miscarriage of justice exception that was discussed by the Supreme Court" in ***Schlup v. Delo***, 513 U.S. 298 (1995), and ***Coleman v. Thompson***, 501 U.S. 722 (1991). Therefore, in the rare and extraordinary case in which a habeas petitioner can demonstrate equitable tolling is appropriate on actual innocence grounds, the petitioner

is not required to demonstrate he diligently pursued the actual innocence claim. ***See Lopez v. Trani***, 628 F.3d 1228, 1230-31 (10th Cir. 2010). However, to be credible, a claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." ***Schlup***, 513 U.S. at 324. The petitioner then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." ***Id***. at 327. The Court emphasizes that a "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." ***Id.*** at 324.

Mr. Freeman primarily argues that equitable tolling of the one-year limitation period is appropriate because he is actually innocent. The factual premise for Mr. Freeman's actual innocence argument is the letter purportedly written by Eddie Johnson and dated January 13, 1997, that, according to Mr. Freeman, contradicts Eddie Johnson's trial testimony that he did not receive any benefit for testifying against Mr. Freeman. As noted above, Mr. Freeman alleges that the Eddie Johnson letter was suppressed by the government until October 2008, but he provides no details regarding the circumstances of his discovery of that letter.

The Court is not persuaded that the Eddie Johnson letter is new, reliable evidence that demonstrates Mr. Freeman is actually innocent because "actual innocence means factual innocence, not mere legal insufficiency." ***Bousley v. United States***, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). Mr. Freeman does

not contend that he is factually innocent of the crimes for which he was convicted. In other words, Mr. Freeman does not contend that he did not plant and attempt to detonate the pipe bomb under the car his stepdaughter and her boyfriend were in and he does not contend that he did not shoot his stepdaughter while she was running away from the car. Instead, Mr. Freeman contends that the Eddie Johnson letter would bolster his insanity defense and would have led to his acquittal on some of the charges. Mr. Freeman specifically contends that the Eddie Johnson letter would have supported his insanity defense because the prosecution expert who opined that Mr. Freeman was sane relied in part on statements made by Eddie Johnson in reaching that conclusion. However, any evidence that Eddie Johnson actually received a benefit for his testimony would be merely impeaching evidence that does not demonstrate Mr. Freeman is factually innocent. Furthermore, an insanity defense, even if justified, does not demonstrate factual innocence. ***See DeLalio v. Wyoming***, 363 F. App'x 626, 628 (10th Cir. 2010) (finding that a valid legal defense based on cognitive impairment does not suffice for factual innocence).

Finally, even if the Eddie Johnson letter was relevant to the question of factual innocence, the Court finds that the letter does not demonstrate "that it is more likely than not that no reasonable juror would have convicted [Mr. Freeman] in the light of the new evidence," ***Schlup***, 513 U.S. at 327, because the Court does not agree with Mr. Freeman's interpretation of the statements in that letter. Instead, the Court agrees with Respondents that the specific reference in the letter to a reduced sentence appears to relate to assistance provided by Eddie Johnson in a different case and not in Mr. Freeman's case. For all of these reasons, the Court finds that equitable tolling is not

appropriate on the grounds of actual innocence.

Mr. Freeman also appears to argue that equitable tolling is appropriate based on the lack of access to documents in his attorneys' files prior to October 2004 and the trial court's denials of his motions for transcripts. As discussed above, Mr. Freeman maintains that access to the documents in his attorneys' files and the transcripts was necessary to pursue postconviction relief in both state and federal court.

Mr. Freeman fails to demonstrate that equitable tolling is appropriate based on the alleged failure of his attorneys to provide him with documents from their files until October 2004. It is true that "sufficiently egregious misconduct on the part of a habeas petitioner's counsel may justify equitable tolling of the AEDPA limitations period." ***Fleming v. Evans***, 481 F.3d 1249, 1256 (10th Cir. 2007); ***see also Holland***, 130 S. Ct. at 2564 (stating that one-year limitation period is subject to equitable tolling when "serious instances of attorney misconduct" have occurred). In ***Fleming***, the petitioner's substantiated allegations that he had been actively misled by counsel to believe a habeas petition had been prepared and would be filed were sufficient to warrant an evidentiary hearing to consider whether equitable tolling was appropriate. ***See id.*** at 1256-57. In ***Spitsyn v. Moore***, 345 F.3d 796, 801 (9th Cir. 2003), a case cited by Mr. Freeman, the Ninth Circuit addressed this same issue and concluded that misconduct of the petitioner's attorney "was sufficiently egregious to justify equitable tolling of the one-year limitations period." The particular misconduct in ***Spitsyn*** was the following:

> Though he was hired nearly a full year in advance of the deadline, [the attorney] completely failed to prepare and file a petition. Spitsyn and his mother contacted [the attorney] numerous times, by telephone and in writing, seeking action,

> but these efforts proved fruitless. Furthermore, despite a request that he return Spitsyn's file, [the attorney] retained it for the duration of the limitations period and more than two months beyond.

***Id.***

In the instant action, Mr. Freeman fails to demonstrate that the failure of his attorneys to provide him with documents from their files between June 2002 and October 2004 was sufficiently egregious. Unlike the allegations in ***Fleming*** and ***Spitsyn***, Mr. Freeman does not allege that his attorneys were hired to file a federal habeas petition or that his attorneys actively misled him or somehow caused him to believe that they were pursuing his claims in either state or federal court. In fact, Mr. Freeman concedes that direct appeal counsel was permitted to withdraw from representing Mr. Freeman on January 17, 2003, when he still had a full year to file a federal habeas petition. In addition, the Court finds that Mr. Freeman fails to demonstrate equitable tolling is appropriate because he fails to specify what documents he sought from his attorneys and he fails to explain how his lack of those documents prevented him from filing a timely habeas petition. Therefore, the Court finds that equitable tolling is not appropriate on this basis.

Mr. Freeman also fails to demonstrate that equitable tolling is appropriate based on the trial court's denials of his motions for transcripts. ***See Lloyd***, 296 F.3d at 634 (stating that "equitable tolling does not excuse [the petitioner's] late filing simply because he was unable to obtain a complete trial transcript before he filed his § 2254 application."); ***Donovan v. Maine***, 276 F.3d 87, 93 (1st Cir. 2002) (concluding that "the state court's delay in furnishing the petitioner with the transcript did not establish a basis

for equitable tolling.”); ***Jihad v. Hvass***, 267 F.3d 803, 806 (8th Cir. 2001) (finding that “lack of access to a trial transcript does not preclude a petitioner from commencing post-conviction proceedings and therefore does not warrant equitable tolling.”).

For all of these reasons, the Court finds that this action is barred by the one-year limitation period. Because the Court has determined that the entire action is time-barred, the Court need not address Respondents’ alternative arguments that some of Mr. Freeman’s claims are unexhausted and procedurally barred. Accordingly, it is

ORDERED that the habeas corpus application is denied and the action is dismissed as barred by the one-year limitation period in 28 U.S.C. § 2244(d). It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.

DATED at Denver, Colorado, this 22nd day of November, 2011.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court